UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONDRIEL L. JOHNSON,

        Petitioner,

                                  Civil No. 03-CV-72770-DT
                                  HONORABLE PAUL D. BORMAN
v.                               UNITED STATES DISTRICT JUDGE

TERRY SHERMAN,

        Respondent,

_____/

OPINION AND ORDER: 1) DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS; 2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND 3)
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

        Dondriel L. Johnson ("Petitioner"), presently confined at the Marquette Branch Prison in

Marquette, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  In his *pro se* application, petitioner challenges his conviction for car-jacking, M.C.L.A.

750.529a, and for being classified as a second-felony habitual offender, M.C.L.A. 769.10.  For

the following reasons, the Court denies petitioner's application for a writ of habeas corpus.

## I.  BACKGROUND

        Petitioner was convicted of the above offense following a jury trial in the Wayne County

Circuit Court.  The victim testified that, on the evening of September 11, 1999, she drove her

sister's car to a gas station, where she made a telephone call to her boyfriend from a pay

telephone in order to leave a message on his voice mail.  A man whom the victim had seen

earlier at a liquor store got into the car, pointed a pistol at her head, and ordered her to start the

car.  The victim identified Petitioner as being her assailant. When the victim refused to comply,

Petitioner hit her on her head with the pistol.  The victim attempted to climb over Petitioner to

open the passenger door, which could not open from the inside, by reaching through the window and opening it from the outside. A struggle ensued between Petitioner and the victim, during which time, the victim grabbed the gun and threw it out of the car window. The victim opened the car door and began running. Petitioner picked up his gun and chased the victim. Two men came up and scared Petitioner. Petitioner got into the victim's sister's car and drove away.

Three days later, the victim was at her sister's house when Petitioner, arriving on a bicycle, came to the door and asked to speak with a man named "Junior." The victim informed "Junior" that Petitioner was the man who had taken her sister's car at gunpoint. Petitioner told "Junior" that he did not carjack the victim. "Junior" and another man attacked Petitioner and attempted to restrain him until the police arrived. The victim testified that her sister's car was parked in the driveway of her sister's house on this day; she did not elaborate on how the car had been recovered.

Dacha Quinn ("Quinn"), who had been present at the gas station at the time of the car-jacking, testified that she saw the victim, who was her friend, at a pay telephone. Quinn observed a man whom she identified as Petitioner get into the victim's car and observed a struggle. The victim got out of the car and ran towards the gas station. Quinn then witnessed Petitioner exit the car, pick up a gun, and begin chasing the victim. Petitioner then got into the car and drove away. Quinn had never seen Petitioner before. A few days later, Quinn went to the victim's sister's house and saw Petitioner being held on the ground. After Quinn called the police, the police came and arrested Petitioner. Quinn remembered Petitioner's shoes.

Officer Kerwin Smith testified that he was taking a witness statement from Quinn's cousin when Quinn came and told him that the person who had car-jacked the victim was around

2

the corner.  Officer Smith went to the victim's sister's house and saw a man standing over

Petitioner with a shovel.  Petitioner was arrested for the car-jacking.

Petitioner testified that, on the day of the car-jacking, he was home in bed with a peptic

ulcer.  Petitioner denied any involvement in the car-jacking.  Petitioner's girlfriend, Patricia

Cutts ("Cutts"), testified that Petitioner was sick in bed between September 11 and September

13, 1999, with a peptic ulcer.

Petitioner was convicted and sentenced to nine to twenty years' imprisonment.  The

Michigan Court of Appeals and the Michigan Supreme Court affirmed Petitioner's conviction on

appeal. *People v. Johnson,* 227341 (Mich. Ct. App. February 8, 2002); *lv. den.* 467 Mich. 863

(2002).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.      Defendant was denied effective assistance of counsel by his attorney's
        failure to obtain a voice analysis of the tape which was presented into
        evidence, and by his attorney's failure to move to suppress his prior
        convictions.

II.     The trial court denied defendant his constitutional right to present a
        defense by suppressing testimony concerning the retrieval of the stolen car
        and the forging of the title, which would have tended to exculpate
        defendant; trial counsel was ineffective for failing to present evidence that
        someone other than defendant was in possession of the stolen vehicle.

III.    The prosecutor denied defendant a fair trial by badgering his witness and
        implying that the charges would have been dropped had she gone to the
        police instead of defendant's attorney and by shifting the burden of proof;
        trial counsel was ineffective for failing to object.

IV.     Defendant must be resentenced where the trial court made mistakes of law
        in sentencing him, and his sentence of 9 to 20 years is disproportionate.

## II.  ANALYSIS

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

3

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## A.  Ineffective Assistance of Trial Counsel

As to his first claim, Petitioner contends that he was deprived of the effective assistance of trial counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

4

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.*

### 1.  Voice-print Analysis

Petitioner contends that his trial counsel was unconstitutionally ineffective for failing to obtain a voice-print analysis of the tape recording of the victim's voice-mail, which recorded a portion of the car-jacking as it was transpiring and which was played for the jury.  Petitioner contends that such a voice-print analysis would have established that it was not his voice on the voice-mail.

In *People v. Tobey*, the Michigan Supreme Court ruled that voice-print evidence has yet to achieve general scientific acceptance as a reliable identification device and is, therefore, inadmissible in the Michigan courts.  401 Mich. 141, 148 (1977).  Although the Michigan Supreme Court indicated, in *Tobey,* that its decision was not to foreclose the introduction of voice-print evidence in future cases if and when there was demonstrated scientific acceptance of such evidence, *Id.*, no Michigan cases, post *Tobey*, have recognized voice-print evidence as reliable evidence of identification that would be admissible in court.

Before the United States Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993), several circuits, including the United States Court of Appeals for the Sixth Circuit, admitted expert voice-identification testimony under the standard for admissibility of scientific evidence of *Frye v. U.S.*, 293 F. 1013 (D.C.Cir.1923). *See U.S. v.*

5

*Jenkins*, 525 F.2d 819 (6th Cir. 1975).  However, the Supreme Court in *Daubert* held that Federal Rule of Evidence 702 superceded the "Frye standard" for the admissibility of scientific evidence and that, under Rule 702, a federal district court had to determine whether the proffered expert testimony was both reliable and relevant. *Daubert,* 509 U.S. at 587-89.  As one district court has observed, in the aftermath of *Daubert*, no federal appellate court has approved the admission of expert voice-identification testimony into evidence.  *See United States v. Angleton,* 269 F. Supp.2d 892, 896 (S.D. Tex. 2003).

In *United States v. Drones*, 218 F.3d 496, 502-03 (5th Cir. 2000), the United States Court of Appeals for the Fifth Circuit held that defense counsel was not unconstitutionally ineffective for failing to obtain a voice-print analysis of an incriminating telephone conversation that the defendant purportedly had because of the likely inadmissibility of expert voice-identification testimony in the federal courts.  The Fifth Circuit further noted that the expert testimony that had been presented at the defendant's evidentiary hearing demonstrates that voice-print "analysis is--and was at the time of Drones's trial--of questionable scientific validity." *Id.* at 503.  One expert had testified that there was "no proven theoretical basis for the basic underlying premise that one person's voice is truly unique and therefore identifiable." *Id.*  This expert also testified that this had resulted in "a precipitous drop" in the number of voice-print identification experts in the past few decades, from fifty to sixty practitioners in the 1970's to approximately a dozen experts at the time of Drones' trial. *Id.*  Although another expert testified that expert voice-identification testimony has been used in both state and federal courts over the past thirty years, this expert did not know if the relevant scientific community widely accepted voice-print evidence and he conceded that numerous factors, including a defendant's ability to

6

disguise his own voice, could affect the reliability of expert voice-print analysis. *Id.* at 503-04.

In Petitioner's case, given the uncertainty of the reliability and admissibility of expert voice-identification evidence, this Court cannot conclude that trial counsel's strategic decision not to obtain voice-print analysis was unreasonable. *See Drones,* 218 F. 3d at 504.  Moreover, in light of the substantial evidence inculpating Petitioner at trial, including two eyewitnesses' positive identification of Petitioner as the car-jacker, Petitioner was not prejudiced by counsel's failure to obtain an expert on voice-print analysis. *See id.*

## 2.  Petitioner's Prior Convictions

Petitioner argues that his trial counsel was unconstitutionally ineffective for failing to file a pre-trial motion *in limine* to suppress his two prior convictions from being used to impeach his credibility.  Petitioner concedes that neither of his prior convictions were admitted into evidence against him.  Petitioner contends, however, that his counsel's failure to file a motion *in limine* permitted the prosecutor to ask Petitioner whether he had been convicted in the past ten years of a crime involving theft, dishonesty, or a false statement, to which question Petitioner responded that he had been arrested for breaking into a telephone booth. Because Petitioner was never convicted of this offense, he contends that this prior arrest should never have been admitted into evidence.

Michigan Rule of Evidence 609 governs the admission of prior convictions for impeachment purposes.  Prior convictions for non-theft crimes that do not contain elements of dishonesty or false statement should never be admitted into evidence.  *People v. Allen*, 429 Mich. 558, 596 (1988).  On the other hand, crimes having an element of dishonesty or false statement are directly probative of truthfulness and, therefore, cannot be excluded under Rule

7

609 when offered to impeach the defendant's testimony. *Id.* at 593-94. Prior convictions for crimes having an element of theft may, in the trial court's discretion, be used to impeach the defendant's testimony. *Id.* If a prior theft crime has an element of dishonesty or false statement, that conviction is automatically admissible for impeachment purposes. *Id.* at 596, n. 17. If an offense is a theft crime that does not involve dishonesty or false statement, a trial court must examine the conviction to determine if the crime is punishable by more than one year in prison, and, if the witness is the defendant, the court must determine whether the probative value of the evidence outweighs its prejudicial effect. *People v. Allen*, 429 Mich. at 605-06.

To show prejudice from a trial counsel's allegedly ineffective assistance in failing to file a motion to exclude prior convictions, a defendant must show that: 1) had his counsel filed the motion, it is reasonable that the trial court would have granted the motion, and 2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to the defendant. *See Wilson v. Henry,* 185 F. 3d 986, 990 (9th Cir. 1999). A habeas petitioner's "mere speculation" that a motion to suppress may have been meritorious is insufficient "affirmatively [to] prove prejudice." *See Travasso v. Clark,* 162 F. Supp. 2d 1106, 1118 (N.D. Cal. 2001).

In the present case, although the trial court likely would have suppressed Petitioner's 1980 conviction for attempted breaking and entering, for which conviction more than ten years had elapsed since the termination of his sentence, Petitioner is unable to establish that the trial court would have excluded his 1995 conviction for attempted possession of burglary tools had trial counsel filed such a motion *in limine*. Under Michigan law, a conviction for possession of burglary tools requires proof that the defendant possessed tools that were adapted and designed

8

for breaking and entering, that the defendant knew that the tools were adapted and designed for that purpose, and that the defendant possessed the tools with the intent to use them for breaking and entering. *See People v. Wilson,* 180 Mich. App. 12, 16 (1989).  Although no Michigan cases address whether a conviction for possession of burglary tools can be used for impeachment purposes, several cases have held that a prior breaking-and-entering conviction is admissible to impeach a defendant's credibility. *See People v. Robinson*, 172 Mich. App. 650 (1988); *People v. Bartlett*, 197 Mich. App. 15, 19-20 (1992).  Courts in other states have permitted prosecutors to impeach a criminal defendant with a prior conviction for possession of burglary tools. *See e.g. Com. v. Simmarano,* 50 Mass. App. Ct. 312, 317 (Mass. Ct. App. 2000); *State v. Lombardi,* 727 A.2d 670, 676 (R.I. 1999).  Moreover, at least one federal court has held that a conviction for possession of burglary tools could be used to impeach a witness' credibility. *See Lewis v. Sheriffs Dept. for City of St. Louis,* 817 F.2d 465, 467 (8th Cir. 1987).  Petitioner has, therefore, failed to establish that the trial court would have suppressed his prior convictions had his trial counsel filed any such motion *in limine.*

Of special note, even if the trial court would have granted a motion *in limine* to exclude Petitioner's prior convictions for attempted breaking and entering and attempted possession of burglary tools, Petitioner has failed to demonstrate that it would have resulted in an more-favorable outcome for Petitioner.  *See Wilson v. Henry,* 185 F. 3d 986, 990 (9th Cir. 1999). Indeed, Petitioner concedes that neither prior conviction was introduced into evidence.  *Cf. Reynolds v. Hannigan,* 53 F. Supp. 2d 1149, 1154 (D. Kan. 1999)(holding that defense counsel's failure to move to suppress photographs seized in a search of the defendant's home did not unduly prejudice the defendant's trial, for purposes of his ineffective-assistance-of-

counsel claim, where the photographs were not introduced into evidence and only one witness referred to them in passing). Moreover, Petitioner's testimony concerning his prior arrest for breaking into a telephone booth was non-responsive to the prosecutor's question regarding Petitioner's prior convictions such that Petitioner may well have testified to that arrest absent such question. Petitioner is, therefore, not entitled to habeas relief on his first claim

### B.  Right to Present a Defense

As to his second claim, Petitioner asserts that the trial court deprived him of his constitutional right to present a defense when it prohibited the victim from testifying that her sister's car had been found in the possession of someone other than Petitioner and that the title had been forged. The trial court excluded this evidence because the victim did not have any personal knowledge about these issues.

Just as an accused has the right to confront the prosecution's witnesses to challenge their testimony, he also has the right to present his own witnesses to establish a defense. Indeed, this right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("[W]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,*

10

476 U.S. at 689.  The Supreme Court gives trial courts "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.*  The test for determining whether a state court's erroneous evidentiary ruling denied a habeas petitioner a fair trial centers on whether the excluded evidence would have created a reasonable doubt that did not otherwise exist. *Harris v. Stegall,* 157 F. Supp. 2d 743, 748 (E.D. Mich. 2001).

In the present case, the admission into evidence of the victim's testimony regarding the recovery of the car and the forged title, which testimony was beyond the victim's personal knowledge, would have violated Michigan Rule of Evidence 602 and was, therefore, properly excluded.  *See McCullough v. Stegall,* 17 Fed. Appx. 292, 296 (6th Cir. 2001) (unpublished opinion).  Moreover, evidence of a third party's culpability is generally inadmissible absent substantial evidence directly connecting that third party to the actual commission of the offense for which the defendant is on trial. *Walters v. McCormick*, 122 F. 3d 1172, 1177 (9th Cir. 1997); *see Cikora v. Dugger*, 840 F. 2d 893, 898 (11th Cir. 1988).  Here, the sole evidence upon which Petitioner relies is a police report that indicates that, on September 13, 1999, a man other than Petitioner was found inside of the stolen car.  The man informed the police that two black men and a white woman sold him the car for $75.  Significantly, the man described one of the males as being approximately six feet tall, 205 pounds, and about 36 years old.  Petitioner was six feet, two inches tall, 195 pounds, and 38 years old, and was, therefore, similar in appearance to one of the men who sold the car.  Thus, Petitioner has pointed to no evidence directly connecting the man to the car-jacking for which Petitioner was on trial.

In any event, even if the state court's decision to exclude the victim's testimony

11

concerning the recovery of the car and the forged title were erroneous, such testimony would not have created a reasonable doubt as to Petitioner's guilt. Rather, evidence that another man was found in possession of the stolen vehicle and a forged title two days after the car-jacking would not necessarily have exculpated Petitioner as the actual car-jacker. *See e.g. State v. McNeill,* 326 N.C. 712, 721-22 (N.C. 1990)(holding that evidence that a third party was in possession of personal property allegedly taken from the murder victim's trailer several hours after the crime was not inconsistent with the defendant's armed robbery and murder of the victim, and that such evidence was properly excluded). Thus, the exclusion of the victim's testimony concerning such evidence did not deprive Petitioner of a fair trial.

As to his second claim, Petitioner also contends that trial counsel's failure to introduce the third-party evidence was unconstitutionally ineffective. However, this related claim, likewise, lacks merit. A defense counsel's decision not to introduce evidence of a third party's culpability is not unconstitutionally ineffective where such evidence does not "point unerringly" to the guilt of the third party and the innocence of the accused. *See Hoots v. Allsbrook,* 785 F. 2d 1214, 1222 (4th Cir. 1986). As noted above, evidence that a man other than Petitioner was in possession of the stolen vehicle and a forged title two days after the car-jacking does not point unerringly to Petitioner's innocence as the car-jacker. Consequently, trial counsel was not unconstitutionally ineffective for failing to introduce this evidence at Petitioner's trial. Petitioner is, therefore, not entitled to habeas relief on his second claim.

### C. Prosecutorial Misconduct

As to his third claim, Petitioner alleges that the prosecutor committed misconduct by asking Cutts, Petitioner's alibi witness, to explain why she never informed the police about

12

Petitioner's alibi or his whereabouts at the time of the car-jacking.  Petitioner also contends that the prosecutor committed misconduct by noting, in his closing argument, that Petitioner failed to offer any medical evidence or testimony to corroborate his contention that he was at home suffering from a peptic ulcer at the time of the car-jacking.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the prosecutor's conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, a court should consider the degree to which the prosecutor's challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

A prosecutor may properly comment upon a defendant's failure to call or to subpoena available alibi witnesses. *United States v. Edwards*, 159 F 3d 1117, 1130 (8th Cir. 1998).  A prosecutor may do so as long as the comments do not call attention to the defendant's own failure to testify. *United States v. Fleishman*, 684 F 2d 1329, 1343 (9th Cir. 1982).  Such comments do not shift the burden of proof on the defendant. *United States v. Schultz*, 698 F 2d 365, 367 (8th Cir. 1983).  Moreover, a prosecutor may properly comment on the failure of alibi witnesses to come forward voluntarily. *United States v. Laury*, 985 F 2d 1293, 1305-06 (5th Cir. 1993). Indeed, the Sixth Circuit has held that the delay of the defendant's wife in providing an

13

alibi for the defendant was a proper subject of inquiry in the cross-examination of the wife. *See United States v. Aguwa*, 123 F 3d 418, 420 (6th Cir. 1997).

In this case, the prosecutor's questioning of Cutts as to why she did not inform the police of Petitioner's alleged alibi and the prosecutor's comments concerning Petitioner's failure to corroborate that alibi were proper. The prosecutor's challenged conduct, therefore, did not render the trial fundamentally unfair. Petitioner's contention that his trial counsel was unconstitutionally ineffective for failing to object to the prosecutor's conduct, likewise, fails. *See Millender v. Adams,* 187 F. Supp. 2d 852, 876 (E.D. Mich. 2002); *aff'd* 376 F. 3d 520 (6th Cir. 2004).

### D.  Petitioner's Sentence

As to his last claim, Petitioner contends that his sentence of nine to twenty years' imprisonment is unconstitutional on several grounds. As a threshold matter, Petitioner's sentence was within the statutory limits for the offenses of car-jacking and being an habitual offender. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Moreover, a sentence within the statutory maximum does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000); *Johnson v. Smith,* 219 F. Supp. 2d 871, 884 (E.D. Mich. 2002).

Petitioner argues that the trial court failed to determine, before sentencing, that Petitioner's prior convictions rendering him an habitual offender were valid. Yet, a state court's alleged violation of its own procedures for establishing a habeas petitioner's status as an habitual offender is not a ground for habeas relief. *See Reed v. Clark,* 984 F. 2d 209, 210 (7th

14

Cir. 1993).  Moreover, as the Michigan Court of Appeals observed in affirming Petitioner's

conviction, Petitioner never challenged the validity of the prior convictions that rendered him an

habitual offender for purposes of his sentence.  Petitioner bore the burden of proving the

invalidity or unconstitutionality of any prior convictions that rendered him an habitual offender.

*See Hobson v. Robinson,* 27 Fed. Appx. 443, 445 (6th Cir. 2001)(citing *Parke v. Raley,* 506 U.S.

20, 28-34 (1992)) (holding that the presumption of regularity that attaches to final judgments

makes it appropriate for the defendant to bear the burden of showing an irregularity in the

proceedings)(additional citations omitted).  By failing to object to the trial court's consideration

of his prior convictions for purposes of his sentence, Petitioner failed to carry his burden of

showing the invalidity of his prior convictions. *Id.*

 Petitioner argues that the trial court relied on inaccurate information in sentencing him.

To prevail on such a claim, a habeas petitioner must demonstrate that the sentencing court relied

upon information that was materially false. *Collins v. Buchkoe,* 493 F. 2d 343, 345-346 (6th Cir.

1974); *Johnson,* 219 F. Supp. 2d at 884.  Here, Petitioner contends that the trial court

inaccurately referred to Petitioner's conviction for car-jacking as a "life offense."  However, as

the Michigan Court of Appeals noted, car-jacking is, in fact, an offense that carries a maximum

sentence of life imprisonment.  Thus, Petitioner has failed to demonstrate that the sentencing

court relied upon information that was false–let alone materially so.  *See Stegall,* 157 F. Supp.

2d at 823.

 Lastly, Petitioner argues that his sentence of nine to twenty years' imprisonment was

disproportionate to both the offenses and the offender.  The United States Constitution,

however, does not require that sentences be proportionate.  In *Harmelin v. Michigan*, 501 U.S.

15

957, 965 (1991), a plurality of the Supreme Court underscored that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and the sentence.  Rather, the Court held that the Eighth Amendment only forbids extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001.  Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).  Federal courts, therefore, will review such proportionality only where the sentence imposed is death or life imprisonment without parole.  *See Stegall,* 157 F. Supp. 2d at 823 (citing *United States v. Thomas,* 49 F. 3d 253, 260-61 (6th Cir. 1995)).  Moreover, a claim that a sentence violates only state law does not state a claim for federal habeas relief.  *Id.*

Here, Petitioner does not assert that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment but, rather, simply asserts that his sentence was disproportionate under Michigan law.  *See Whitfield v. Martin,* 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).  Moreover, as noted above, Petitioner's sentence falls within the statutory limits.  *See Stegall,* 157 F. Supp. 2d at 823.  Petitioner is, therefore, not entitled to habeas relief on his last claim.

### IV.  SUMMARY

For the preceding reasons, the Court concludes that Petitioner is not entitled to a writ of habeas corpus.  The Court, therefore, DISMISSES WITH PREJUDICE the instant habeas petition.

Before Petitioner may appeal the Court's dismissal of the instant habeas petition, the Court must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b).  The Court may issue a certificate of appealability "only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A

petitioner satisfies the substantial-showing standard when he demonstrates "that reasonable

jurists would find the . . . [C]ourt's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court must either issue a certificate of

appealability indicating which issues satisfy the required showing or explain why such a

certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of*

*Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

     The Court concludes that jurists of reason would not find debatable or wrong the Court's

conclusion that the foregoing claims do not entitle Petitioner to habeas corpus relief.  The

Court, therefore, DECLINES to issue a certificate of appealability.  The Court, likewise,

DENIES Petitioner leave to appeal *in forma pauperis.  See Allen v. Stovall,* 156 F. Supp. 2d

791, 798 (E.D. Mich. 2001).

SO ORDERED.

                              s/Paul D. Borman                  
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE

Dated:  June 13, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S.
Mail on June 13, 2005.

                              s/Jonie Parker                    
                              Case Manager

17